**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-0827-WJM

LORI ROBERTS,

     Plaintiff,

v.

MICHAEL ASTRUE, Commissioner of Social Security

     Defendant.

_____

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DENIAL OF BENEFITS**
_____

This matter is before the Court on review of the Commissioner's decision denying

Plaintiff's application for Supplemental Security Income benefits.  Jurisdiction is proper

under 42 U.S.C. § 405(g).  For the reasons set forth below, the Commissioner's

decision is AFFIRMED.

## I.  BACKGROUND

Plaintiff Lori A. Roberts ("Plaintiff") was born on May 28, 1986 and was 23 years

old on the alleged disability onset date.  (Admin. Record ("R.") at 20, 62.)  Plaintiff left

school in the eleventh grade and has not obtained a GED.  (R. at 46.)  Plaintiff has no

relevant work experience.  (R. at 29.)

Plaintiff filed an application for supplemental security income on January 5, 2009.

(R. at 142.)  Plaintiff's claims were heard by Administrative Law Judge Jennifer B.

Millington ("ALJ") on August 10, 2010.  (R. at 20.)  Plaintiff, medical expert Richard L.

Pollock, and vocational expert Kari Jensen testified at the administrative hearing.  (*Id.*)

On September 10, 2010, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1]  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2008.  (R. at 28.)  At step two, she found that Plaintiff suffered from the following severe impairments: bipolar disorder, posttraumatic stress disorder, panic disorder, borderline personality disorder, math learning disorder, attention deficit/hyperactivity disorder, and alcohol and cocaine abuse.  (*Id.*)  At step three, the ALJ found that Plaintiff's impairments, while severe, did not meet or medically equal any of the impairments or combination of impairments listed in the social security regulations.  (*Id.*)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but limited her to "unskilled" work based on the ALJ's finding that this work matched Plaintiff's limitations related to attention and concentration.  (R. at 24.)  The ALJ also found that Plaintiff had the RFC to only occasionally interact with co-workers and supervisors and could not have any contact with the public.  (*Id.*)  Finally, the ALJ found that Plaintiff could not perform work that is fast-pace or has high production demands.  (*Id.*)

---

[1] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Because Plaintiff has no past relevant work experience, at step four, the ALJ found that transferability of job skills is not an issue. (R. at 29.) At step five, the ALJ found that there were significant numbers of jobs in the national economy that Plaintiff could perform. (*Id.*) Specifically, the ALJ found that Plaintiff could work as a sweeper/cleaner, cleaner/housekeeper, and hospital cleaner. (*Id.*)

Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and, thus, not entitled to benefits. (R. at 29.) The Appeals Council denied Plaintiff's request for review on February 9, 2012. (R. at 1.) Plaintiff then filed this action seeking review of the Commissioner's decision. (ECF No. 1.)

## II. LEGAL STANDARD

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a

lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.

1993).

### III.  ANALYSIS

In her appeal, Plaintiff raises three arguments with respect to the ALJ's denial of

benefits: (1) the ALJ erred in not finding Plaintiff disabled based on Social Security

Ruling 85-15; (2) the ALJ failed to apply the correct legal standard when evaluating the

medical opinions in the record; and (3) the ALJ failed to link her credibility findings

regarding Plaintiff's testimony to evidence in the record.  (ECF No. 13 at 13-21.)  The

Court will address each of these arguments in turn below.

**A.  Social Security Ruling 85-15**

Plaintiff contends that the ALJ should have found Plaintiff to be disabled under

Social Security Ruling 85-15 ("SSR 85-15").  (ECF No. 13 at 13-15.)  SSR 85-15 is a

policy statement that was adopted to emphasize that the potential job base for mentally

ill claimants is oftentimes not large, and also to state that a finding of disability can be

appropriate for an individual who has a severe mental impairment, even where he or

she does not have adversities in age, education, or work experience.  *See* SSR 85-15,

1983-1991 Soc. Sec. Rep. Serv. 343, 1985 WL 56857.  The relevant portion of SSR 85-

15 states:

> Where a person's only impairment is mental, is not of listing
> severity, but does prevent the person from meeting the
> mental demands of past relevant work and prevents the
> transferability of acquired work skills, the final consideration
> is whether the person can be expected to perform unskilled
> work.  The basic mental demands of competitive,

> remunerative, unskilled work include the abilities (on a
> sustained basis) to understand, carry out, and remember
> simple instructions; to respond appropriately to supervision,
> coworkers, and usual work situations; and to deal with
> changes in a routine work setting. A substantial loss of
> ability to meet any of these basic work-related activities
> would severely limit the potential occupational base. This, in
> turn, would justify a finding of disability because even
> favorable age, education, or work experience will not offset
> such a severely limited occupational base.

*Id.* at *4.

The flaw in Plaintiff's argument with regard to SSR 85-15 is that this policy

statement is not intended to supplant any portion of the Commissioner's five-step

process. Rather, SSR 85-15 was intended to clarify policies applicable in cases

involving the evaluation of solely nonexertional impairments and to provide guidance on

how an ALJ should consider nonexertional impairments within the context of the five-

step process.[2]  *See Allen v. Barnhart*, 417 F.3d 396, 405 (3d Cir. 2005); 1985 WL

56857, at *4. SSR 85-15 specifically states that the ALJ must not assume that a

claimant can do unskilled work; rather, the ALJ must make an individualized

determination of the claimant's ability to work based on her RFC and the availability of

---

[2]  The majority of the errors ascribed to SSR 85-15 occur when an ALJ relies solely on this policy statement and applies the occupational grids in lieu of obtaining testimony from a vocational expert as evidence pertaining to step five of the process. *See Meyler v. Comm'r of Soc. Sec.*, 238 F. App'x 884 (3d Cir. 2007); *Thomas v. Astrue*, 2012 WL 5364275, at *4 (Sept. 19, 2012). However, in this case, the ALJ received evidence from a vocational expert and questioned the expert about various hypothetical RFCs and how the different proposed limitations would affect the availability of jobs in the national economy. (R. at 56-59.)  The ALJ then applied this testimony to the RFC she fashioned (which is discussed below) and made an individualized finding that there were a significant number of jobs in the national economy that Plaintiff could perform. (R. at 29.)  SSR 85-15 does not require anything different.

jobs in the national economy.  1985 WL 56857, at *4.

Plaintiff points to the evidence in the record showing that she has a marked impairment in social functioning and cannot work in an environment that places significant demands on her productivity.  (ECF No. 13 at 14.)  Plaintiff is correct that the SSR 85-15 mandates that the ALJ consider this evidence when fashioning an RFC. *See* 1985 WL 56857, at *5-6; *see also Perkins v. Astrue*, 2012 WL 4755402, *2 (C.D. Cal. Oct. 5, 2012).  However, the record shows that the ALJ did consider Plaintiff's social functioning and her inability to work under pressure in her RFC.  Specifically, the ALJ found that Plaintiff could have no contact with the general public, only occasional interaction with coworkers and supervisors, and could not perform work that was fast-paced or had high production demands.  (R. at 24.)

After considering these mental limitations in fashioning the RFC, the ALJ then went on to consider whether there were jobs in the national economy that Plaintiff could perform.  (R. at 29.)  The ALJ did not simply assume that, because Plaintiff does not have an exertional limitations, then she could necessarily perform unskilled work. Rather, the jobs cited by the ALJ in support of her step five analysis—*i.e.*, sweeper/cleaner, cleaner/housekeeper, and hospital cleaner—are all jobs that do not involve high production demands or engagement with co-workers or the public. Therefore, the Court finds that the ALJ's application of the five-step process took into account the policies outlined in SSR 85-15.

Therefore, the Court finds that Plaintiff has failed to show how the ALJ misapplied SSR 85-15 or how this policy statement mandated a different result in this case.  Accordingly, the Court sees no error in the manner in which the ALJ relied on (or failed to rely on) SSR 85-15 which requires reversal of the denial of benefits.

**B.    Weighing of Medical Evidence**

Plaintiff next argues that the ALJ erred in her evaluation of the medical evidence in the record. [3] (ECF No. 13 at 15.)  "An ALJ must evaluate every medical opinion in the record."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).  In determining what weight to give any medical opinion, the ALJ "must . . . consider a series of specific factors" listed in 20 C.F.R. § 404.1527(d) and § 416.927(d).  *See id.*  Those sections of Title 20 of the Code of Federal Regulations provide,

> How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. . . .
>
> (3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a

---

[3]  The Court notes that none of the medical opinions in the record were from a treating physician so the sequential process applicable to treating physicians is not relevant here.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions.  We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. . . .

(6) Other factors.  When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.  For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 416.927(d); *see also* 20 C.F.R. § 404.1527(d).  "After considering the

pertinent factors, the ALJ must give good reasons in the notice of determination or

decision for the weight he ultimately assigns the opinion."  *Watkins v. Barnhart*, 350

F.3d 1297, 1301 (10th Cir. 2003) (quotation marks and brackets omitted).

Plaintiff raises three arguments regarding the ALJ's weighing of the medical

evidence.  The Court will address each in turn below.

1.    Dr. Combs's Opinion on Plaintiff's Employability

Plaintiff first argues that the ALJ erred in giving "no weight" to the opinion of Dr.

Laura Combs because Dr. Combs had examined Plaintiff twice and conducted a battery

of tests which formed the basis for her opinions.  (ECF No. 13 at 16.)  However,

8

Plaintiff's argument fails because it is completely dependent on a misstatement of the record.  The ALJ did not give "no weight" to the majority of Dr. Combs's opinion.  After thoroughly discussing Dr. Combs's opinion, the ALJ stated that she found Dr. Combs's opinion "not fully persuasive" and gave it "some weight".  (R. at 26.)

The only portion of Dr. Combs's opinion that the ALJ gave "no weight" was Dr. Combs's opinion that "it is unlikely that [the claimant] will be able to work to independently support herself and her family".  (R. at 26.)  This conclusion was not error because it is well-established that whether a claimant is employable is an issue reserved to the Commissioner.  *See* 20 C.F.R. § 416.927(d)(1) (stating that a physician's opinion that a claimant is "unable to work" is not a medical opinion and need not be evaluated under the factors set forth above).  The Tenth Circuit has explicitly held that "[t]he ALJ is entitled to disregard a doctor's statement that a claimant is 'disabled' or 'unable to work'." *Bibbs v. Apfel*, 3 F. App'x 759, 762 (10th Cir. 2001).

Therefore, Plaintiff has failed to show that the ALJ erred in giving no weight to Dr. Combs's opinions on Plaintiff's employability.  Whether the ALJ erred in assigning "some weight" to the remainder of Dr. Combs's opinion is discussed in greater detail below.

> 2.    Dr. Pollock's Opinion Regarding Contact with Public, Co-workers and Supervisors

Plaintiff contends that the ALJ improperly "picked and chose" amongst the medical opinions offered by Dr. Pollock.  (ECF No. 13 at 19.)  Specifically, Plaintiff argues that the ALJ only credited those portions of Dr. Pollock's opinions that were

consistent with her RFC and discredited the other portions without offering sufficient explanation for the disparate treatment of the various opinions.  (*Id.*)

In his testimony at the hearing, Dr. Pollock opined that Plaintiff should have "limited contact with the public, and equally limited contact with co-workers and limited being less than an hour in an eight hour day."  (R. at 45.)  Dr. Pollock testified that co-workers, supervisors, and the public was each "in its own category" and that she should generally have to deal with each category for less than an hour a day.  (*Id.*)  He stated "there could be overlap, but generally speaking she's going to need to have minimal amount of involvement with other people."  (*Id.*)

The ALJ found Dr. Pollock's opinion "persuasive" but "not fully persuasive because its limitation on contact with coworkers and supervisors does not appear consistent with the claimant's social skills as demonstrated by her maintenance of a relationship with her boyfriend, her reports of maintaining friendships, and her ability to regularly ask directions to and obtain food from various organizations."  (R. at 28.)  Plaintiff argues that the ALJ impermissibly rejected Dr. Pollock's limitation regarding contact with supervisors, coworkers, and the public while finding the remainder of his opinion to be persuasive.  (ECF No. 13 at 19.)  Plaintiff also contends that the ALJ erred by substituting her own lay opinion for Dr. Pollock's medical opinion.  (*Id.*)

There is support for Plaintiff's contention that an ALJ cannot "pick and choose" from a medical opinion; however, that is true only when it is an "<u>uncontradicted</u> medical opinion".  *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).  When there is

conflicting evidence, as there is in this case, an ALJ is "entitled to resolve any conflicts in the record." *Id.* In resolving these conflicts, an ALJ is permitted to disregard or discredit a medical opinion that is contradicted by other evidence in the record. S*ee Lopez v. Barnhart*, 183 F. App'x 825, 828 (10th Cir. 2006).

In this case, there is sufficient medical evidence in the record to permit the ALJ to find that Plaintiff could have more interaction with other individuals than that recommended by Dr. Pollock.  Specifically, Plaintiff reported to Dr. Bradley that she had no "specific problems with interpersonal relationships" and that she had "several friends".  (R. at 241.)  While Dr. Combs's opinions note a number of employment-related difficulties and suggest that modifications may need to be made to accommodate for Plaintiff's medical conditions, Dr. Combs does not suggest that Plaintiff's interaction with the public, co-workers, and supervisors be limited in any material respect.  (R. at 253.)

On top of the medical opinions which conflicted with Dr. Pollock's opinion, there was other evidence showing that Plaintiff maintained social relationships.  Plaintiff had been married for three years and, at the time of the hearing, had been in a relationship with her boyfriend for five months.  (R. at 48, 241.)  Plaintiff's treatment notes from her mental health provider suggest that she kept in contact with friends and, at one point, was "going out with her friends from high school" at least three days per week.  (R. at 263, 289.)  This evidence is more than sufficient to permit the ALJ to not fully credit Dr. Pollock's recommended restrictions on Plaintiff's interaction with co-workers and supervisors.

It is notable that the ALJ did not outright ignore the disputed portion of Dr. Pollock's opinion; she adopted significant limitations on Plaintiff's interactions with others, just not to the degree proposed by Dr. Pollock.  (R. at 24.)  Instead of limiting contact to less than one hour in an eight hour day, the ALJ found that Plaintiff could have "no contact with the general public" and could only "occasionally interact with supervisors and coworkers".  (*Id*.)  As set forth above, there is substantial evidence in the record to support this deviation from Dr. Pollock's recommendation.  Thus, the Court sees no error in the manner in which the ALJ weighed Dr. Pollock's opinions.

       3.     Weight Generally Assigned to Various Medical Opinions

Plaintiff generally argues that the ALJ erred in how she weighed the various medical opinions in the record.  (ECF No. 13 at 15-20.)  As discussed below, the Court finds no error.

In this case, the ALJ reviewed each of the medical opinions and gave "some weight" to Dr. Combs's examining opinion, "significant weight" to Dr. Bradley's examining opinion, found Dr. Pollock's non-examining opinion to be "persuasive" but "not fully persuasive", and gave "considerable weight" to the non-examining opinion of Dr. Frommelt.  (R. at 25-28.)  As required by the regulations, these findings were made within the context of a relatively thorough discussion of the medical evidence and were linked to specific evidence supporting the findings.

Plaintiff contends that the ALJ erred in giving more weight to the non-examining physicians opinions than she did to the examining physicians' opinions.  (ECF No. 13 at

15-16.) While, as Plaintiff points out, the Commissioner is generally required to give more weight to an examining physician than a non-examining physician, this is only one factor in determining the overall weight to afford a medical opinion. *See* 20 C.F.R. § 416.927(d). This is not a case in which the ALJ gave little weight to a treating physician and great weight to a non-examining source. *Compare Daniell v. Astrue*, 384 F. App'x 798, 799 (10th Cir. 2010) (finding error when ALJ did not properly evaluate a treating physician's opinion and instead relied heavily on a non-examining physician). None of the medical opinions offered by Plaintiff came from a treating source. The physician with the most contact with Plaintiff—Dr. Combs—saw Plaintiff on only two occasions. (R. at 218-228, 245-54.) Moreover, Plaintiff's visits with Dr. Combs were not for treatment; Dr. Combs was retained to conduct a battery of tests for the purpose of preparing a psychological evaluation report (and later an updated report) for Boulder County Human Services in conjunction with their proceedings involving Plaintiff's ability to care for her children. (*Id.*) The fact that Dr. Combs's opinions were not offered in the context of a disability evaluation is a factor that is proper for the ALJ to consider in weighing her opinion. *See* 20 C.F.R. § 416.927(d)(6).

Plaintiff fails to cite any law showing that whether a physician examined a claimant is more significant than any of the other factors set forth in the regulations or that ultimately assigning more weight to a non-examining opinion than an examining opinion is *per se* error. When reviewing each medical opinion, the ALJ noted whether each medical opinion was examining or non-examining and discussed this factor along

13

with the other factors set forth in the regulations.  She gave specific reasons for why she assigned each opinion a particular weight.  For example, she noted that Dr. Combs's opinion was only entitled to "some weight" because it "does not state the severity of any of the specific limitations and therefore does not indicate the extent to which the claimant's ability to perform any specific task is limited."  (R. at 27.)  The ALJ found Dr. Bradley's examining opinion "persuasive" because it is supported by the largely normal findings and other evidence demonstrating that the claimant retains significant capacity despite her limitations."  (*Id.* at 26.)  This discussion of the weight assigned each opinion and the link to the specific evidence in the record supporting such weight satisfies the regulatory requirements.

The Court finds that Plaintiff's arguments regarding the ALJ's weighing of the medical evidence really come down to a disagreement with the outcome rather than a quarrel about whether the ALJ applied the correct legal standard.  The Court believes that Plaintiff makes some valid points on the relative strength of the various medical opinions, such as the quality and quantity of tests performed by each physician and amount of evidence considered by the non-examining physicians.  (ECF No. 13 at 16-19.)  Were the Court deciding this issue in the first instance, it may have arrived at a different result.  However, the Court's role is not to look at the medical evidence anew: it may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).  Rather, the Court must affirm the Commissioner's decision if the legal standards were applied correctly and there is

substantial evidence supporting the ALJ's findings.  *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994).

Having reviewed the relevant portions of the record, the Court finds that the ALJ applied the correct legal standard, adequately explained her rationale for the weight assigned to each medical opinion, and that her findings are supported by substantial evidence in the record.  Therefore, the Court finds no error in the manner in which the ALJ weighed the medical opinions.

**C.     The ALJ's Credibility Assessment of Plaintiff**

With respect to Plaintiff's testimony at the hearing, the ALJ stated that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements regarding the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment for the reasons set forth below."  (R. at 25.) The ALJ then went on to review the medical evidence and opinions.  (*Id.* at 25-28.) Plaintiff argues that ALJ's credibility finding was not based on substantial evidence in the record and also that the ALJ failed to cite any specific factors that led her to discredit Plaintiff's testimony.  (ECF No. 13 at 20-21.)

Plaintiff cites *Kepler v. Chater*, 68 F.3d 387 (10th Cir. 1995) for the proposition that the ALJ must "explain why the specific evidence relevant to each factor led her to conclude claimant's subjective complaints were not credible."  (ECF No. 13 at 21.)  The Court notes that *Kepler* has not been interpreted to require a formalistic factor-by-factor

recitation of the evidence.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Therefore, Plaintiff's brief fails to show how the ALJ's credibility determination was error.

Although not cited by Plaintiff, the Court is aware that an ALJ is required to cite

specific evidence supporting her credibility determination.  *See* Social Security Ruling

96–7p, 1996 WL 374186.  The ALJ's decision in this case appears to fall short of

meeting this requirement.  However, even if the Court were to find that the ALJ erred in

failing to specify the evidence she relied on to discredit Plaintiff's testimony, any such

error would be harmless.  *See Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994)

(applying harmless error in a Social Security case where error was technical and

substantial evidence supported the outcome).  Plaintiff has failed to point to any

testimony that, if the ALJ had credited, would have changed the outcome of this case.

The ALJ's RFC is consistent with the severity of the limitations expressed by

Plaintiff in her testimony.  Plaintiff testified that she did things slowly, could not

remember directions, could not do math in her head, and had difficulty with handwriting.

(R. at 46-56.)  The ALJ's RFC specified that Plaintiff could not work in a "fast-paced" job

or where there were "high production demands".  (R. at 24.)  The ALJ also found that

Plaintiff could only perform unskilled work which, by definition, involves "primarily

dealing with objects, rather than with data or people."  *See* SRR 85-15, 1985 WL 56857,

at *4.  The jobs that the ALJ found Plaintiff could perform were sweeper/cleaner,

cleaner/housekeeping, and hospital cleaner.  (R. at 29.)

There is no indication that, had the ALJ fully credited Plaintiff's testimony, she would have found arrived at a different RFC or found that Plaintiff could not work in the jobs discussed above.  The key issue in this case with regards to Plaintiff's employability was the degree to which Plaintiff could interact with her co-workers, supervisors, and the public.  (*See* ECF No. 13 at 19.)  Plaintiff's testimony at the hearing did not provide much, if any, insight into this issue.  Plaintiff testified that she maintained personal relationships, was able to ask people around town where she could find food, and was generally get herself around town.  (R. at 48-51.)  The only testimony showing difficulty interacting with people was Plaintiff's statement that she did not get along with her parents and that has become violent in the past when she could not leave a situation.  (*Id.* at 55.)  The RFC accounts for these limitations in that it restricts Plaintiff from working with the public entirely and limits her interaction with supervisors and co-workers to occasional.  (*Id.* at 24.)

The Court has already found that substantial evidence in the record supports the ALJ's weighing of the medical opinions and, therefore, the RFC the ALJ fashioned.  Because there is no evidence that the ALJ's RFC would have been any different if the ALJ had fully credited Plaintiff's testimony, the Court finds that any error in the ALJ's assessment of Plaintiff's credibility was harmless.  Therefore, the Court finds that any error associated with the ALJ's credibility finding with respect to Plaintiff's testimony does not mandate reversal of the ALJ's denial of benefits.

## IV.  CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Commissioner's denial of benefits.  The Clerk shall close this case and enter judgment in favor of Defendant.

Dated this 19th day of April, 2013.

BY THE COURT:

William J. Martinez
United States District Judge